**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| DELARICK HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  05-3074-MLB |
| | ) | |
| JOEL M. YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

This is a prisoner civil rights case in which plaintiff proceeds pro se.  The case comes before the court on plaintiff's motion for Martinez report (Doc. 62) and defendant's motion for summary judgment (Doc. 72).  The motions have been fully briefed and are ripe for decision.  (Docs. 63, 64, 73, 75.)  For the reasons stated herein, plaintiff's motion for a Martinez report is DENIED and defendant's motion for summary judgment is GRANTED.[1]

**II.   PROCEDURAL POSTURE**

Plaintiff Delarick Hunter is a prisoner formerly incarcerated in the custody of Mr. Randall Henderson, the sheriff of Wyandotte County, Kansas.  Plaintiff's original complaint was brought solely against Henderson alleging section 1983 claims based on delayed treatment of his medical condition and the use of excessive force.  Plaintiff was subsequently allowed to amend his complaint.  (Doc. 48.)  He removed

---

[1] Plaintiff has also filed a motion to compel discovery (Doc. 77) and responsive briefs were filed (Docs. 79, 82).  Plaintiff's motion is rendered moot by the court's order granting defendant's motion for summary judgment and is therefore DENIED.

the claim based on medical treatment and added a claim based on denial of access to a law library.  In his amended complaint, plaintiff also added a new defendant, Joel M. Young.[2]  On defendant Henderson's motion for summary judgment, the claim for denial of access to a law library was dismissed in its entirety and the claim for use of excessive force was dismissed against Henderson.  Thus, only the claim against defendant Young for use of excessive force remains.

### III.  MOTION FOR **MARTINEZ** REPORT

Plaintiff has requested the court require a report be prepared pursuant to <u>Martinez v. Aaron</u>, 570 F.2d 317, 318-19 (10th Cir. 1978), "so the court can decide[] the Preliminary issues, including those of jurisdiction, to be used with affidavits and exhibits."  (Doc. 62 at 1.)  A <u>Martinez</u> report has already been filed in this matter (Doc. 20) and plaintiff has filed a response to that report (Doc. 29). Defendant asserts that the <u>Martinez</u> report previously prepared and

---

[2]  In his amended complaint, plaintiff sues defendant Young both in his individual and official capacity.  In his request for relief, plaintiff seeks punitive damages, costs, monetary damages for "anxiety," and "all other relief deem[ed] just and proper by this Honorable Court."  (Doc. 48.)  The claimed use of excessive force occurred in February 2004 and is not an ongoing or repetitive harm. Plaintiff's claim must be construed as requesting only monetary relief.

Officials acting in their official capacity are not considered "persons" under section 1983 when sued for monetary damages.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Thus, when a section 1983 plaintiff seeks only monetary damages and not prospective injunctive relief against an official capacity defendant, the official capacity claims are deemed to be against the state.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).

An action against a state for monetary damages, however, is barred by the Eleventh Amendment.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).  Plaintiff's complaint against defendant Young in his official capacity is therefore dismissed and this memorandum and order will proceed only to discuss the claim brought against defendant in his individual capacity.

-2-

submitted by counsel on behalf of defendant Henderson provided sufficient information relating to the claimed use of excessive force and a second report would therefore be duplicative.

A <u>Martinez</u> report is often necessary in a pro se case and is prepared for the purpose of developing a record "sufficient [for the trial judge] to ascertain whether there are any factual or legal bases for the prisoner's claims." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1109 (10th Cir. 1991). The report is also useful for determining "preliminary issues including those of jurisdiction." <u>Martinez v. Aaron</u>, 570 F.2d 317, 319 (10th Cir. 1978). There is no required procedure for reports ordered under <u>Martinez</u> and a court is not required to mandate interrogation of specific people pursuant to plaintiff's desires. <u>See</u> <u>Carpenter v. Edmondson</u>, No. 97-6006, 1997 WL 580490, at *2 (10th Cir. Sept. 19, 1997).

Plaintiff's request for a second <u>Martinez</u> report shows a misunderstanding of the purpose the report serves. The originally prepared <u>Martinez</u> report includes the incident reports prepared by defendant at the time of the event. The report also contains statements from three witnesses to the use of force. While it is true, as plaintiff points out, that the report does not contain a <u>subsequent</u> statement by defendant regarding the claimed excessive use of force and also references information not relevant to the current remaining claim, this is immaterial. The court has been fully briefed on the underlying factual basis of plaintiff's claim and does not require an additional report merely because the named defendant has changed. Plaintiff's motion for a <u>Martinez</u> report is therefore DENIED.

**IV. MOTION FOR SUMMARY JUDGMENT**

    **A.  Summary Judgment Standard: Fed. R. Civ. P. 56**

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler). The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material. See Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991).

        **1.  Moving Party's Burden**

The moving party must initially show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. Adler, 144 F.3d at 670. The nature of the showing depends upon whether the movant bears the burden of proof at trial with respect to the particular claim or defense at issue in the motion. If the nonmoving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials

<u>negating</u> the opponent's" claims or defenses. <u>Celotex</u>, 477 U.S. at 323 (emphasis in original). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's claim. <u>Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim entitling it to judgment as a matter of law. <u>See</u> <u>e.g.</u>, <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc); <u>United Mo. Bank of Kansas City v. Gagel</u>, 815 F. Supp. 387, 391 (D. Kan. 1993); <u>see</u> <u>also</u> <u>Celotex Corp.</u>, 477 U.S. at 331 (Brennan, J., dissenting) ("If the <u>moving</u> party will bear the burden of persuasion at trial, that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c) that would entitle it to a directed verdict if not controverted at trial.").[3] Moreover, the moving party must show the absence of genuine issues of fact regarding each of the affirmative defenses specifically reserved by the non-moving party. <u>Gagel</u>, 815 F. Supp. at 391. "The party moving for summary judgment must establish its entitlement beyond a reasonable doubt." <u>Id.</u>

---

[3] The court notes that the Rule 56 summary judgment standard is identical to that of a Rule 50 judgment as a matter of law standard, <u>see</u> <u>Pendleton v. Conoco, Inc.</u>, 23 F.3d 281, 286 (10th Cir. 1994), and that "[t]he standard is particularly strict when such a ruling is made in favor of the party with the burden of proof." <u>Weese v. Schukman</u>, 98 F.3d 542, 547 (10th Cir. 1996). Under this strict test, the party bearing the burden of proof at trial earns a favorable ruling only when evidence is presented that "the jury would not be at liberty to disbelieve." <u>Weese</u>, 98 F.3d at 547.

### 2.   Non-Moving Party's Burden

If the moving party properly supports its motion, the burden shifts to the nonmoving party, "who may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Muck v. United States, 3 F.3d 1378, 1380 (10th Cir. 1993). In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994). A party opposing summary judgment "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988), aff'd 939 F.2d 910 (10th Cir. 1991). Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### 3.   Presentation of Evidence

Certain local rules further govern the presentation of facts and evidence. Local Rule 56.1 requires the movant to set forth a concise statement of material facts. D. Kan. Rule 56.1. Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the defendant relies. See id. The opposing memorandum must contain a

similar statement of facts.  Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the number of the defendants' fact that he disputes.  The court may, <u>but is not obligated to</u>, search for and consider evidence in the record that would rebut one party's evidence, but that the opposing party has failed to cite.  See <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1199 (10th Cir. 2000); <u>Adler</u>, 144 F.3d at 672.  All material facts set forth in the statements of fact are deemed to be admitted for the purpose of summary judgment unless specifically controverted.  See <u>Gullickson v. Sw. Airlines Pilots' Ass'n</u>, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah).  A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.  See <u>Thomas v. Int'l Bus. Machs.</u>, 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted).  For example, hearsay testimony that would be inadmissible at trial may not be included.  See <u>Adams</u>, 233 F.3d at 1246.  Similarly, the court will disregard conclusory statements and statements not based on personal knowledge.  See <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); <u>Gross v. Burggraf Constr. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge).  The court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been

authenticated by and attached to an affidavit meeting the requirements of Rule 56(e).  <u>See</u> Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., <u>Fed. Practice and Procedure</u> § 2722 (2d ed. 1983) (footnotes omitted).  Finally, because a <u>Martinez</u> report has been filed in this proceeding, consideration will be given to it as well.  "On summary judgment, a <u>Martinez</u> report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." <u>Northington v. Jackson</u>, 973 F.2d 1518, 1521 (10th Cir. 1992).

Given that plaintiff is proceeding <u>pro se</u>, the court will also credit as evidence statements made by him in his pleadings and briefs, so long as the statements were based on personal knowledge and made under penalty of perjury.  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991).  However, as noted above, the court is under no obligation to comb the record in search of such sworn statements.  Rather, under the applicable procedural rules, it is the duty of the parties contesting a motion for summary judgment to direct the court to those places in the record where evidence exists to support their positions.  Plaintiff's <u>pro se</u> status does not absolve him from compliance with the rules of procedure, including the local rules and this court's standing order.  <u>See</u> <u>Nielsen v. Price</u>, 17 F.3d 1276, 1277 (10th Cir. 1994).

### 4.   **Summary**

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because

-8-

they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**B.  Analysis**

Pursuant to 42 U.S.C. § 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See American Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

There is a defense to a claim brought under section 1983. Government officials performing discretionary duties are afforded qualified immunity shielding them from civil damage liability. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity protects these officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See Wilson v. Layne, 526 U.S. 603, 609

(1999); Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well. See Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998).

"The framework for analyzing claims of qualified immunity on summary judgment is well settled." Baptiste, 147 F.3d at 1255. When a defendant has pled qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. See Horstkoetter, 159 F.3d at 1277-78; Baptiste, 147 F.3d at 1255. As noted in County of Sacramento v. Lewis, 523 U.S. 833 (1998), the first step is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5; Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). "Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue." Baptiste, 147 F.3d at 1255 n.6.

To determine whether a plaintiff has sufficiently asserted the violation of a constitutional right at all, this court must determine whether the plaintiff's allegations, if true, state a claim for a violation of a constitutional right. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a

-10-

constitutional violation is purely a legal question. See id. Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court can not avoid the legal issue by simply framing it as a factual question. See Archer v. Sanchez, 933 F.2d 1526, 1530 & n.7 (10th Cir. 1991).

Even if a plaintiff meets this hurdle, the Tenth Circuit requires the contours of the right at issue to be sufficiently clear that a reasonable official would have understood that what he was doing violated a right that was clearly established at the time the alleged acts took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). This standard, however, must be used in a particularized manner[4] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter, 159 F.3d at 1278. Were this level of particularity not required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson, 483 U.S. at 639-40 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

---

[4] The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

If plaintiff successfully thwarts defendant's qualified immunity defense, the ordinary summary judgment burden returns to defendant to show no material issues of fact remain that would defeat the claim of qualified immunity. See Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996). This standard requires defendant to show there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to defendant at the time. See id. Even if plaintiff is able to withstand summary judgment, defendant is nonetheless able to reassert the defense of qualified immunity at trial. See Gossett v. Oklahoma Bd. of Regents for Langston University, 245 F.3d 1172, 1181 n.5 (10th Cir. 2001).

Proceeding to the first step in the analysis, plaintiff alleges that excessive force was used against him in violation of his civil rights. As an initial matter, the court notes the parties have disagreed at times concerning the appropriate standard for evaluating plaintiff's claim. Plaintiff's complaint alleged a violation of the Fourteenth Amendment and the Eighth Amendment. In his response to the Martinez report, plaintiff makes clear that his claim is being brought under the Eighth Amendment. In defendant Henderson's motion for summary judgment, defense counsel asserted that the Fourth Amendment standard should be used[5] but in defendant Young's motion for summary judgment, defense counsel asserts that plaintiff's claim should be analyzed under the Eighth Amendment.

---

[5] Because the claim regarding excessive force was no longer being pursued by plaintiff against defendant Henderson and was therefore dismissed as to Henderson, the court has not yet had the opportunity to determine the appropriate governing standard.

-12-

Regardless of the parties' positioning on the issue, it is clear to the court that the appropriate standard lies in the Eighth Amendment.[6] The Eighth Amendment's proscription against cruel and unusual punishment is applicable "following a 'determination of guilt after a trial or plea.'" Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990) (quoting Bell v. Wolfish, 441 U.S. 520, 536 n.17 (1979)). At the time of the incident, plaintiff was an inmate at the Wyandotte County Jail. Plaintiff had plead guilty to the charge of failure to register as a sex offender and was awaiting sentencing. The Fourth Amendment, however, protects against unreasonable seizure, and prohibits the use of excessive force during the course of "an arrest, investigatory stop, or other 'seizure' of a free citizen." Graham v. Connor, 490 U.S. 386, 395 (1989). Plaintiff was not a free citizen at the time of the incident; his guilt had been adjudged and he was merely awaiting sentencing. Thus, the Eighth Amendment standard applies to plaintiff's claim.

The Eighth Amendment has been construed to protect prisoners from measures taken to inflict unnecessary and wanton suffering. Thus, when prison officials are accused of using excessive force, the core judicial inquiry is whether the force was applied in either a good-faith effort to maintain or restore discipline or whether the acts

---

[6] The court notes that analysis of an excessive force claim under the Fourteenth Amendment as a violation of substantive due process would be appropriate only when the excessive force claim could not be characterized as arising under either the Fourth or Eighth Amendment. See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (stating that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process")(internal citations and quotations omitted).

were taken maliciously and sadistically to injure the prisoner. See Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (relying upon Hudson v. McMillian, 503 U.S. 1 (1992) and Whitley v. Albers, 475 U.S. 312 (1986)). This inquiry is guided by the wide discretion given to prison officials in the administration of internal prison practices. See Whitley, 475 U.S. at 321-22 (giving "'wide-ranging deference'" to prison security measures "taken in response to an actual confrontation with riotous inmates"). As such, not every touch or contact, regardless of how offensive it may appear through the tranquil lens of hindsight, violates the Eighth Amendment. See Hudson, 503 U.S. at 9-10 (stating de minimis uses of physical force are excluded from constitutional recognition). To balance this deference with the rights of prison inmates, courts weigh several factors, including (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by prison officials, and (4) any efforts made to temper the severity of a forceful response. See Whitley, 475 U.S. at 321. Additionally, the extent of the injury suffered also provides insight as to whether the inmate was subjected to wanton and unnecessary force. See Hudson, 503 U.S. at 7.

The facts of the underlying incident are, in some respects, disputed. On February 15, 2004, plaintiff was in the custody of the Wyandotte County Jail when force was used against him on two separate occasions. The second use of force gives rise to plaintiff's

excessive use of force claim.[7] Plaintiff's narrative of the incident, taken from his amended complaint, states the following:

> On or about February 15, 2004, plaintiff [was] at the WY Co. Detention Center. After being applied force [sic] by Deputies: Brockman & Thaxton plaintiff was handcuffed, and locked in cell #10 of F Pod (remaining handcuffed). He was ordered to sit on his bunk. Plaintiff was in pain. Plaintiff suffers from Cerebral Palsy. Sergeant Joel Young then shot plaintiff with the M-26 Tazer because he did not sit on the bed. Plaintiff could not move. He was ordered to sit on his bed a second time. When plaintiff did not respond a second time, he was hit (shocked) a second time by Sergeant Young with the M-26 Tazer. This was [an] unreasonable application of force in violation of my civil rights.

The parties agree on some additional facts. On the day of the incident plaintiff was in "lock down" status for disciplinary reasons. The initial altercation occurred with deputies not named in this action when plaintiff was receiving his daily medications. After the initial altercation, plaintiff was in his cell, with handcuffs in place. Defendant subsequently went to plaintiff's cell and "order[ed] him to sit on his bunk while plaintiff was requesting for a jail supervisor to come speak with him regarding the attack he suffered" (the first altercation with deputies).

The parties disagree, however, on most other facts surrounding the incident. Defendant asserts, through reference to incident reports and affidavits, that the initial altercation occurred because plaintiff became combative and attempted to leave his cell when the

---

[7] Defendant Young was not present at the first use of force. The Martinez report asserts that defendant arrived at plaintiff's cell immediately after the initial use of force in response to a call for assistance from the deputies involved in the initial altercation.

-15-

door was opened to give him his daily medications.[8]  Defendant further asserts that during the initial altercation, keys were dropped in plaintiff's cell.  Defendant Young states that he arrived at the cell following the initial altercation and ordered plaintiff to sit on his bunk so the cell could be opened and the keys retrieved.  Defendant also states that when plaintiff did not comply he warned plaintiff a taser would be used if plaintiff persisted in his noncompliant behavior.  Defendant claims plaintiff continued to refuse compliance, at which point defendant opened the cell and used the taser to force compliance in order to retrieve the keys.  Defendant claims the taser was applied to plaintiff's back because plaintiff turned his back to avoid the taser as defendant entered the cell.  Defendant asserts that the taser was used the second time because plaintiff continued to refuse to comply with orders to retreat to his bunk.

Plaintiff denies he attempted to leave his cell or that he acted aggressively when he was being administered his medications.  Rather, plaintiff asserts the initial altercation occurred when deputies retaliated against him because they were agitated with his persistent requests and grievances.  Plaintiff states he does not know whether deputies dropped keys in his cell causing a need to enter his cell after the initial altercation.  Plaintiff further asserts that after the initial altercation he attempted to sit down but did not do so

---

[8] As a result of this initial altercation, plaintiff was charged and convicted of battery against a law enforcement officer in Wyandotte County, Kansas, case number 04 CR 00795.  The dispute over the facts of the initial altercation is not relevant to the matter before the court, other than as to how it may relate to the perceived need for force and the threat perceived by prison officials at the time of the incident at issue.

because sitting caused increased pain in his hip and left leg. Plaintiff also claims that he was not hit with the taser as he attempted to dodge its application, but, rather, was hit with the taser after he had already turned from the cell door. Plaintiff finally claims he continued to move after the first application of the taser because he was again trying to ease the pain in his legs caused by the initial altercation.

The court views the facts in the light most favorable to the party opposing summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). However, even assuming the facts are as plaintiff alleges, it could not be found that defendant acted "maliciously and sadistically to inflict unnecessary and wanton suffering"; the required showing to allege an Eighth Amendment violation. Plaintiff acknowledges that the incident at question occurred immediately after an initial altercation with jail deputies. The parties dispute the cause of the initial altercation, but this dispute is not material because it is undisputed that defendant was not present at the initial altercation and arrived at plaintiff's cell only in response to hearing that an altercation had occurred. Plaintiff further acknowledges that he was ordered to sit on his bunk and was shocked because he did not follow that order. Plaintiff even concedes that the second application of the taser occurred because he was again ordered to retreat to his bunk and he again did not do so. It is true that plaintiff was handcuffed throughout the defendant's use of force. However, regardless of the cause, defendant knew plaintiff had just been in an altercation with other deputies and it is certainly reasonable that defendant perceived

-17-

him to be a continuing threat when he arrived at plaintiff's cell. The amount of force described by plaintiff was not so far disproportionate to the perceived threat that it would have been clear to a reasonable officer that the conduct was not a reasonable means of discipline.

The controlling inquiry in all qualified immunity cases is "whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." Simkins v. Bruce, 406 F.3d 1239, 1241 (10th Cir. 2005) (quoting Saucier, 533 U.S. at 202). Even with a favorable view of the facts alleged, plaintiff has not shown a violation of a constitutional right and has failed to meet the first part of his burden. When a plaintiff fails to establish either part of the two-part qualified immunity inquiry, the court must grant the defendant qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). Defendant's motion for summary judgment on the basis of qualified immunity is GRANTED.

## V. CONCLUSION

Plaintiff's motion for Martinez report is DENIED. Defendant's motion for summary judgment is GRANTED.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion

-18-

to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this  4th   day of October 2006, at Wichita, Kansas.

                                           <u>S/ Monti Belot</u>
                                           Monti L. Belot
                                           UNITED STATES DISTRICT JUDGE